1   PETER M. HART (State Bar No. 198691)
    hartpeter@msn.com
2   KIMBERLY A. WESTMORELAND (State Bar No. 237919)
    kwestmoreland.loph@gmail.com
3   AMBER S. HEALY (State Bar No. 232730)
    ahealy.loph@gmail.com
4   **LAW OFFICES OF PETER M. HART**
    One Wilshire Blvd, Suite 2200
5   Los Angeles, CA 90017
    Telephone: (310) 478-5789
6   Facsimile: (509) 561-6441

7   KENNETH H. YOON (State Bar No. 198443)
    kyoon@yoon-law.com
8   STEPHANIE E. YASUDA (State Bar No. 265480)
    syasuda@yoon-law.com
9   **LAW OFFICES OF KENNETH H. YOON**
    One Wilshire Boulevard, Suite 2200
10  Los Angeles, California 90017-3383
    Telephone: (213) 612-0988
11  Facsimile: (213) 947-1211

    Attorneys for Plaintiffs James Lugliani
12  and Chris Willis

13              **UNITED STATES DISTRICT COURT**

14      **CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION**

| | |
|---|---|
| JAMES LUGLIANI, as an individual and on behalf of all others similarly situated, | Case No.:  SACV 10-1303-JAK(VBKx) |
| Plaintiff, | |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF CLASS REPRESENTATIVE'S SERVICE PAYMENT, ATTORNEY'S FEES AND LITIGATION COSTS, AND CLASS ADMINISTRATION FEES** |
| KINDER MORGAN ENERGY PARTNERS, L.P., a limited partnership; KINDER MORGAN TERMINALS, INC., a corporation; KINDER MORGAN BULK TERMINALS, INC., a corporation; KINDER MORGAN SERVICES LLC, a limited liability company; KINDER MORGAN OPERATING "A" L.P., a limited partnership; KINDER MORGAN OPERATING "D", L.P., a limited partnership; KINDER MORGAN TANK STORAGE TERMINALS LLC, a limited liability company; KINDER MORGAN LIQUIDS TERMINALS LLC, a limited liability company; and DOES 1 through 50, inclusive, | **Date:      February 27, 2012** **Time:      8:30 a.m.** **Court:     750** |
| Defendants. | |

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION AND SUMMARY OF THE SETTLEMENT ......................1

II.     THE REQUESTED CLASS REPRESENTATIVE SERVICE
        PAYMENT IS REASONABLE............................................................................3

III.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE
        REASONABLE AND APPROPRIATE..............................................................6

        A.      The Agreement For The Payment Of Fees And Expenses Is

                Appropriate  And Should Be Enforced……………………………9

        B.      Class Counsel's Fee And Costs Award Is Properly Calculated As

                A Percentage Of The Total Value Created For The Benefit

                Of  The Class…………………………………………………..10

        C.      The Common Fund Doctrine…………………………………..…11

        D.      Evolution Of The Percentage Method……………………………12

        E.      The Award Is Supported By 1) The Results Achieved; 2) The Risk,

                3) The Skill Required, 4) The Contingent Nature Of The Fee 5)

                Awards In Similar Cases, And, 6) Class Counsel's Lodestar

                Hours……………………………………………………………...14

                (1).    The Results Achieved………………..…………….....…15

                (2).    Risks of Litigation…………………………………..…..16

                (3).    The Skill Required and the Quality of Work………………17

                (4).    The Contingent Nature of the Fee and the Financial

                        Burden……………………………………………….…..17

                (5).    Awards in Similar Cases…………………..……….……19

                (6).    The Reasonableness of the Requested Fee Award Is

                        Confirmed by Class Counsel's Lodestar……………..…21

V.      THE COURT SHOULD APPROVE THE REQUEST FOR

        REIMBURSEMENT OF COSTS…………………………..……………22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VI.    THE    CLAIMS    ADMINISTRATOR'S    FEES    AND    COSTS
       SHOULD BE  APPROVED....................................................................22

VII.   CONCLUSION ...............................................................................23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF CLASS REPRESENTATIVES' SERVICE
PAYMENT, ATTORNEY'S FEES AND LITIGATION COSTS, AND CLASS ADMINISTRATION FEES (SACV 10-
1303-JAK(VBKx))

1

# TABLE OF AUTHORITIES

2

<u>Federal Cases</u>

3

*Arenson v. Bd. of Trade,* 372 F.Supp. 1349, 1354 (N.D. Ill. 1974) ........................... 8

4

*Benitez et al. v. Wilbur* ................................................................................... 21

5

*Benitez et al. v. Wilbur* (E.D. Cal., 1:08-CV-1122 LJO GSA) ................................ 21

6

*Birch v. Office Depot, Inc.*, Case No. 06cv1690 DMS (WMC), Doc.
   No. 48, P 13 (S.D. Cal. Sept. 28, 2007) ..................................................... 21

7

*Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) ...................................... 9, 13

8

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ........................... 10, 13

9

*Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885) ............... 11

10

*Chavez et al. v. Petrissans et al.* (E.D. Cal., 1:08-CV-00122 LJO-GSA) ............... 21

11

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................... 6

12

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper* 445 U.S. 326, 338,
   *rehg. denied*, 446 U.S. 947 (1980) ......................................................... 7

13

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D.
   240, 251-252 (S.D. Ohio 1991) .............................................................. 6

14

*Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738, n.30 (1980) ............................... 9

15

*Florin v. Nationsbank of Georgia*, 34 F.3d 560, 565 (9th Cir. 1994) ................... 12

16

*Gaskill v. Gordon* 160 F.3d 361, 363 (7th Cir. 1998) ................................... 7

17

*Glass v. UBS Fin. Servs.*, No. C-06-4068MMC,  2007 U.S. Dist. LEXIS
   8476, at *51-52 (N.D.Cal. January 27, 2007) ........................................... 6

18

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ........................................... 9

19

*In re Activision Securities Litigation*, 723 F.Supp. 1373 (9th Cir. 1989) ............... 13

20

*In re Copley Pharm., Inc.* 1 F. Supp. 2d 1407, 1411 (D. Wyo.1998) .................. 7

21

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366,
   374 (S.D. Ohio 1990) .......................................................................... 6

22

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist.
   LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005) ........................... 15, 20

23

*In re King Res. Co. Sec. Litig.*, 420 F.Supp. 610, 634 (D. Colo. 1976) .............. 8

24

*In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S.
   Dist. LEXIS 15488, at *27-28 (S.D. Cal. August 30, 1990) ..................... 14

25

26

27

28

iv

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF CLASS REPRESENTATIVES' SERVICE
PAYMENT, ATTORNEY'S FEES AND LITIGATION COSTS, AND CLASS ADMINISTRATION FEES (SACV 10-
1303-JAK(VBKx))

*In re Omnivision Technologies, Inc*. 559 F. Supp. 2d 1036, 1046 (N.D.Cal. 2007) ................................................................................... 15, 16, 22

*In re Warner Commc'ns Sec. Litig.,* 618 F.Supp. 735, 749-50 (S.D. N.Y. 1985) ................................................................................................ 19

*In re Wells Fargo Home Mortgage*, No. 08-15355, 2009 U.S. App. LEXIS 14864 (9th Cir. July 7, 2009) ................................................. 8

*Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 VBF (Ex), Doc. No. 77, P 6 (C.D. Cal. Oct. 16, 2009) ........................................................... 21

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ............................... 13

*Lindy Bros. Builders, Inc. of Phila. v. American R. & R. San. Corp.* 540 F.2d 102 (3rd Cir. 1976) ........................................................................... 13

*Lindy Bros. Builders, Inc. of Phila. v. American R. & R. San. Corp.*, 487 F.2d 161 (3rd Cir.1973) ......................................................................... 13

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir.1967) ...................................... 18

*McPhail v. First Command Fin. Planning, Inc.*, Case No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, at *21 (S.D. Cal. March 30, 2009) ................................................................................................... 15

*Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) ................................................................................................ 8

*Paul, Johnson, Alston & Hunt v. Gaulty*, 886 F.2d 268 (9th Cir. 1989) ............. 11, 14

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). ................................... 9, 18

*Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) ................................................. 21

*Romero v. Producers Dairy Foods, Inc.*, 1:05cv0484DLB, 2007 U.S. Dist. LEXIS 86270  (E.D. Cal. 2007) ........................................................ 20

*Scura et al. v. Shurgard Storage Centers, Inc.* (U.S.D.C. Northern Dist. Cal. Case No. C 02 5246 CRB) ...................................................................... 20

*Singer v. Becton Dickinson & Co.*, 08-CV-821-IEG(BLM), 2010 U.S. Dist. LEXIS 53416 at *22-*23 (S.D. Cal. June 1, 2010) ................................ 21

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ..................................... 4

*Steiner v. BOC Fin. Corp.*, No. 78 Civ. 348, 1980 U.S. Dist. LEXIS 14561, at *6-*7 (S.D.N.Y. Oct. 10, 1980) .......................................................... 18

*Trustees v. Greenough*, 105 U.S. 527 (1881) ...................................................... 12

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ................................................................................................. 4

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF CLASS REPRESENTATIVES' SERVICE PAYMENT, ATTORNEY'S FEES AND LITIGATION COSTS, AND CLASS ADMINISTRATION FEES (SACV 10-1303-JAK(VBKx))

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) ............................................................................................. 6

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) ........................................................................................... 20

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)....................... 10

*Vizcaino, supra*, 290 F.3d at 1050-51 ........................................................ 21

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (1997) .............. 10, 13

State Cases

*Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1431-32 (2006) ...................... 8

*Lealao v. Beneficial California, Inc.* 82 Cal.App.4th 19, 49-50 (2000) .................... 7

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) ................................................................................ 4

*Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977)........................................... 10, 11

State Statutes

Labor Code § 218.5 ........................................................................ 22

Labor Code § 226 ........................................................................... 22

Other Authorities

1 Richard M. Pearle, *California Attorney Fee Awards* (CEB 3d ed. 2010).................................................................................. 11

A. Conte, *Attorney Fee Awards*, 2nd. Ed. .................................... 12, 14, 20

*Newberg on Class Actions* § 14.6, at 550 (4th Ed. 2010)........................... 20

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF CLASS REPRESENTATIVES' SERVICE PAYMENT, ATTORNEY'S FEES AND LITIGATION COSTS, AND CLASS ADMINISTRATION FEES (SACV 10-1303-JAK(VBKx))

**TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSELS OF RECORD:**

      **PLEASE TAKE NOTICE** that on February 27, 2012, at 8:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable John A. Kronstadt in Courtroom 750 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012, Plaintiffs and Class Representatives James Lugliani and Chris Willis ("Plaintiffs" or "Class Representatives"), and in conjunction with the motion for final approval of the class action settlement (the "Settlement") which has been noticed for hearing this same date, will and hereby do move the Court for an Order (1) fully and finally approving the Service Payment of $10,000.00 to each Class Representatives  James Lugliani and Chris Willis, (2) fully and finally approving the payment of the costs of administration of the settlement in the amount of $20,000.00 to CPT Group, Inc., and (3) fully and finally approving the award of attorneys' fees in the amount of $733,260.00, representing 33 1/3% of the settlement amount, and an additional sum of up to $30,000.00 as the litigation costs allowable under the settlement.

      This Motion is made on the grounds that the proposed Service Payments, Settlement Administration Costs and Attorneys' Fees and Litigation Costs appear to be fair, reasonable, and adequate. The motion is unopposed by Defendants Kinder Morgan Energy Partnes, L.P., Kinder Morgan Terminals, Inc., Kinder Morgan Bulk Terminals, Inc., Kinder Morgan Services, LLC, Kinder Morgan Operating "A" L.P., Kinder Morgan Operating "D", L.P., Kinder Morgan Tank Storage Terminals, LLC, and Kinder Morgan Liquids Terminals LLC (collectively referred to as "Defendants").

1       This Motion will be based on this notice, the Memorandum of Points and

2   Authorities included herein, Declarations of Peter M. Hart and Kenneth H. Yoon, the

3   other records, pleadings and papers filed in this action, and upon such other

4   documentary or oral evidence or argument as may be presented to the Court at the

5   hearing of this motion.

6   DATED:  January 25, 2012          LAW OFFICES OF PETER M. HART

7

8

9             By: _____/s/_____

10                  Peter M. Hart
                    Attorneys for Plaintiff and the Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION AND SUMMARY OF THE SETTLEMENT**

Plaintiffs and Class Representatives James Lugliani and Chris Willis ("Plaintiffs" or "Class Representatives") submit this Motion seeking an award of the Class Representative's Service Payment, attorneys' fees and litigation costs, and claims administrator's costs in relation to the settlement reached between Plaintiffs and Defendants Kinder Morgan Energy Partnes, L.P., Kinder Morgan Terminals, Inc., Kinder Morgan Bulk Terminals, Inc., Kinder Morgan Services, LLC, Kinder Morgan Operating "A" L.P., Kinder Morgan Operating "D", L.P., Kinder Morgan Tank Storage Terminals, LLC, and Kinder Morgan Liquids Terminals LLC (collectively referred to as "Defendants").

The Settlement provides for a gross settlement amount of $2,200,000.00 for a class that is composed of 470 individuals, from which attorneys' fees, litigation costs, payment to the California Labor & Workforce Development Agency for settlement of the PAGA claim, Service Payments to Plaintiffs, and costs of claims administration are deducted prior to payments to the Class.  The Settlement and its release is solely limited to the claims made in Plaintiffs' Third Amended Complaint and is limited to solely non-unionized and non-exempt employees, thus preserving the rights of many other employees.  After payment of all fees and costs, this Settlement will result in each class member receiving a pro rata amount of the net settlement amount (the gross settlement amount less the above deductions) based on the number of weeks they have worked for Defendants, as well as the number of 12-hour shifts they worked.

The Settlement provides that 100% of the net settlement amount will be paid to class members **without the need for filing claim forms**.  (Settlement, ¶ 19). Currently, as of the date of this filing, there are no objections and no opt outs. (Declaration of Peter M. Hart ("Hart Decl.") ¶ 1.)

As previously detailed in the preliminary approval motion, this case has had a substantial litigation history since January 2010, when it was first filed.  To date,

1  the case has been litigated for two years, including substantial investigation/discovery

2  including taking two Fed. R. Civ. P. 30(b)(6) depositions of Defendants, detailed

3  analysis of Defendants' payroll reimbursement policies, Plaintiffs' Motion for Class

4  Certification, a mediation with private mediatior Hunter Hughes, continued settlement

5  discussions after the mediation, extensive litigation including a drafted *ex parte*

6  application regarding Defendants' contact of class members—contact which Plaintiffs

7  believed would have been inappropriate with a pending class certification motion, and

8  discussions with Defendants' counsel regarding their intention to file a summary

9  judgment motion while Plaintiffs' certification motion was pending.  (Hart Decl. ¶ 2.)

10         In this case, Defendants produced documents which reflected Defendants'

11  company policies regarding vacation, meal periods, rest periods, and overtime during

12  the class period.  Plaintiffs sought to prove that all Class Members were denied proper

13  vacation wage accrual, denied proper meal breaks, denied proper rest breaks, denied

14  overtime wages, and were not paid the lost wages in a timely manner.  This required

15  attorney review of the policies and payroll records.  Without attorney review of data, it

16  is possible to miss potential theories of liability.  Further, only attorney analysis can

17  provide the basis of knowledge for Plaintiffs' counsel to be able to communicate issues

18  during settlement negotiations and to this Court.  Attorney review of data permits a

19  better ability to provide realistic ranges of damages, as required by *Kullar*, and for that

20  matter, as required to professionally represent the class.  (Hart Decl. ¶ 3.)

21         Further, even since settlement, there has been significant attorney time in

22  addressing various disbursement issues.  Due to the varying lengths of employment and

23  the different shift lengths of the class members depending on their job title, the Parties

24  went back and forth numerous times regarding the distribution formula for the Class

25  Members before agreeing on the one ultimately implemented herein.  (Hart Decl. ¶ 6.)

26         In sum, this was a highly litigated and contentious case prior to reaching

27  the current Settlement.  (Hart Decl. ¶ 6.)

28         Plaintiff Lugliani's action to retain Plaintiffs' counsel started the above

1  efforts.   Throughout this matter, Mr. Lugliani was intimately involved in this case,

2  seeking regular updates.   He undertook this case at significant risk to himself, putting

3  himself out on a public record for many people to see and preparing to have his

4  deposition taken, even though ultimately the deposition was cancelled.  (Declaration of

5  James Lugliani ("Lugliani Decl.") ¶¶ 6, 7.)

6       Plaintiff Willis' efforts in this case were also very important to the success

7  of Plaintiffs' case.  Mr. Willis provided key information regarding Defendants' policies,

8  practices and procedures.   Mr. Willis joined this case at significant risk to himself,

9  putting himself out on a public record for many people to see and preparing to have his

10 deposition taken, even though ultimately the deposition was cancelled due to the case

11 settling.  (Declaration of Chris Willis ("Willis Decl.") ¶¶ 7, 8.)

12      CPT Group, Inc. is the Claims Administrator.  At this time, they estimate

13 $20,000.00 to perform all the work required of them in the Settlement, which is the

14 same as the original estimate provided to the Class in the Class Notice.  (Hart Decl. ¶

15 7.)

16      Finally, at this time there are no objections or opt outs to the Settlement.[1]

17 **II.    THE REQUESTED CLASS REPRESENTATIVE SERVICE PAYMENTS**

18 **ARE REASONABLE**

19      Numerous courts have found it appropriate to recognize the role of the

20 representative plaintiffs without whose actions and courage the benefits of the

21 settlement, which are conferred on the class as a whole, would never have been

22 achieved.  The criteria courts may consider in relation to service payments include: 1)

23 the risk to the class representative in commencing the suit, both financial and otherwise;

24 2) the notoriety and personal difficulties encountered by the class representative; 3) the

25 amount of time and effort spent by the class representative; 4) the duration of the

26

27 [1]  Class Counsel will provide further briefing and updates regarding the numbers on

28 claims rate, opt outs and objections as part of their anticipated Motion for Final Approval.

litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving award of $50,000 to named plaintiff).  Each of these factors favors the incentive awards requested in the present case.

Plaintiffs are requesting a Service Payment of $10,000.00 to each Plaintiff which was preliminarily approved by the Order Preliminarily Approving Settlement. Plaintiffs request that this Court confirm its original decision and finally approve the requested Service Payments in light of the efforts Plaintiffs put into this case, the excellent result achieved by the Settlement, the relative proportionality of the Service Payment to a $2,200,000.00 settlement, and the range of recovery of the Class Members.  To date there have been no objections to these Service Payments.  (Hart Decl. ¶ 1.)

The Service Payments are also reasonable in light of the recoveries of individual class members with at least 36 Class Members receiving over $15,000.00, and 2 Class Members receiving over $16,000.00.[2]

As shown in the supporting declarations, Plaintiffs were in communication with Class Counsel on a regular basis to discuss the case, including providing substantive information regarding Defendants' policies, practices, and procedures. Plaintiffs also communicated with Class Counsel and remained apprised of the case via telephone conversations and emails.  (Lugliani Decl. ¶ 8; Willis Decl. ¶ 8; Hart Decl. ¶ 8.)

Plaintiffs have contributed significantly towards making the Settlement happen for the benefit of the entire Class.  Plaintiffs performed the following tasks: (1)

---

[2] Since this is a guaranteed fund, the final amounts will not be known until the Claims Administrator confirms the number of valid opt-outs.  If there are any opt-outs, each Class Members' recovery will increase.   Final numbers will be provided in conjunction with the Motion for Final Approval.

assisted with initial investigation; (2) provided documents that were key for case development; (3) actively participated in discussions with counsel regarding case development, document review, including Plaintiff Willis travelling from as far away as San Diego to meet with them, etc; (4) reviewed documents with Class Counsel; (5) actively followed the settlement negotiations and independently evaluated the terms of the settlement, reviewed the settlement, to reach a decision concerning settlement with assistance of counsel; and (6) seeking to represent a class of their fellow colleagues. (Lugliani Decl. *generally*; Willis Decl. *generally*; Hart Decl. ¶ 8.)

Furthermore, given that future employers are less likely to hire individuals who have filed lawsuits against their previous employer, the Class Representatives faced, and will likely continue to face, significant risks in not being able to find suitable employment in the future.  When seeking employment, one will have to reveal the name of his or her former employer, including Defendants, to the prospective employer. Should the prospective employer contact the former employer, it is quite likely that the former employer will reveal that not only did Plaintiffs sue their former employer, but also did so in a class-action—one of the highest risk types of litigation to employers. (Hart Decl. ¶ 9.)   These were risks Plaintiffs took upon themselves when initiating and joining this class action as a named representative.

Plaintiffs took these risks upon themselves and the whole class benefited from this.  Class Members did not have to file individual lawsuits nor did they have to bear the risks of payment of fees and costs should they not prevail. Class Members also do not have to face the risk of potential retaliation or risk of future employment, due to the efforts of Plaintiffs.  Since Plaintiffs brought a vacation claim that has a two-way attorney's fee provision, Plaintiffs would have been responsible for paying Defendants' attorney's fees had the vacation claim come down in Defendants' favor.   Further, since Plaintiffs negotiated a no-reversion, no-claim settlement, the Class Members who are currently employed by Defendants will receive their share of the settlement without any fear of potential retaliation.  (Hart Decl. ¶ 10.)

The payment of service awards to successful class representatives is appropriate and the amount of $10,000.00 is within the accepted range. *See e.g. Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (two incentive awards of $ 55,000, and three incentive awards of $ 35,000); *Brotherton v. Cleveland,* 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 service award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ($50,000 awarded to each class representative). *Glass v. UBS Fin. Servs.*, No. C-06-4068MMC,  2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D.Cal. January 27, 2007) (awarding $25,000 service award in FLSA overtime wages class action); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 service award to class representative in ERISA case).

Finally, the amount requested for the Service Payment was explicitly stated in the Class Notice and no objections and no opt outs have been filed for the amount sought as of this date.  (Hart Decl. ¶ 14.)  The $10,000.00 Service Payments to each Class Representative are also in line with the projected recoveries of the Class Members—94 Class Members, 20% of the Class, are projected to receive more than $10,000.00, with 36 receiving over $15,000.00, and 2 receiving over $16,000.00. Accordingly, the Court should find that the Class Representative Service Payments are fair and reasonable.

## III.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND APPROPRIATE

Class Counsel have achieved an excellent settlement in this litigation as set forth in the Motion for Preliminary Approval and the Settlement Agreement attached thereto.  The proposed settlement provides substantial monetary benefits to the Class. The Settlement was reached after highly aggressive, lengthy and continuous litigation, which included Plaintiffs filing a motion for class certification and post-mediation

litigation and extensive discussions between Class Counsel and counsel for Defendants necessary to put the case into a position to resolve.  As explained below, Class Counsel's request for attorneys' fees and reimbursement of costs is within the range of reasonableness.  Accordingly, Class Counsel's request for the award of attorneys' fees and costs should be granted.

In defining a reasonable fee, the Court can look at the marketplace for cases involving a significant contingent risk such as this one.  Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law in class actions, attorneys providing these substantial benefits should be paid an award equal to the amount negotiated in private bargaining that takes place in the legal market place. *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper* 445 U.S. 326, 338, *rehg. denied*, 446 U.S. 947 (1980).  "When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set. . . . The judge, in other words, is trying to mimic the market in legal services." *Gaskill v. Gordon* 160 F.3d 361, 363 (7th Cir. 1998); *see also Lealao v. Beneficial California, Inc.* 82 Cal.App.4th 19, 49-50 (2000)("attempting to award the fee that informed private bargaining, if it were truly possible, might have reached." A fee award should approximate a "percentage fee [] freely negotiated in comparable litigation."); *In re Copley Pharm., Inc.* 1 F. Supp. 2d 1407, 1411 (D. Wyo.1998)("the percentage of the fund method better approximates the workings of the marketplace by focusing on the results achieved.").

At the time this case was brought, the result was far from certain.  Defendants' numerous defenses to the case created difficulties with proof and complex legal issues for Class Counsel to overcome.  For example, on the overtime claim, Defendants contended that they had a *de minimus* and argued that the off the clock time spent exchanging information between employees at a shift change was negligible and therefore not required to be paid, and that the bonuses were discretionary and therefore did not need to be calculated into the overtime rate.  Defendants also argued "nature of

1   the work" as a defense to Plaintiffs' meal and rest break claims, and Plaintiffs were and

2   are aware that such a defense could be successful.   Defendants further denied liabilty

3   on Plaintiffs' vacation and wage statement claims.  Given these defenses, Plaintiffs also

4   faced the risk that Labor Code § 203 penalties would not be available.

5         As a result, Plaintiffs' claims presented significant risks with respect to

6   liability and litigation to tria.[3]  All of these were very substantial risks any of which

7   could have resulted in the Class receiving nothing if the claims were litigated.

8         The Settlement was possible only because Class Counsel had been able to

9   convince Defendants that Class Counsel could potentially prevail on the legal issues

10   regarding the vacation, meal break, rest break, and overtime claims and the willfulness

11   argument, achieve and maintain class certification for the Class, and overcome

12   difficulties in proof as to monetary relief.

13         In successfully navigating these hurdles so as to convince Defendants to

14   settle, Class Counsel displayed skills consistent with those that might be expected of

15   attorneys of comparable experience.  Here, Class Counsel was pursuing difficult claims

16   where previous actions on similar claims have failed to establish liability, failed to

17   obtain and/or maintain class certification, and/or failed to obtain monetary recovery for

18   these employees.

19         Class Counsel's skill in presenting this case to overcome the difficulties

20   that prevented recovery in many other wage and hour class action cases is also

21   compelling given the exceptional and well recognized quality of Defendants' Counsel

22   from a capable, and well-staffed law firm.  *See In re King Res. Co. Sec. Litig.*, 420

23   F.Supp. 610, 634 (D. Colo. 1976); *Arenson v. Bd. of Trade,* 372 F.Supp. 1349, 1354

24   (N.D. Ill. 1974).  Class Counsel also took this on a contingent fee basis, and took upon

25

26   [3]   The Ninth Circuit recently reversed certification of loan consultants in *In re Wells Fargo Home Mortgage*, No. 08-15355, 2009 U.S. App. LEXIS 14864 (9th Cir. July 7, 2009); *see also Dunbar v. Albertson's, Inc*., 141 Cal. App. 4th 1422, 1431-32 (2006) (affirming an order denying class certification to employees because common issues did not predominate); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000); *Walsh v. Ikon Office Solutions*, 148 Cal. App. 4th 1440, 1463 (2007) (upholding decertification of an overtime class).

27

28

- 8 -

themselves the risk that if there is no successful resolution there would be no recovery to them.   Class Counsel had to forego compensable hourly work on other cases to devote the necessary time and resources to this contingent case.   *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

A.     **The Agreement For The Payment Of Fees And Expenses Is Appropriate And Should Be Enforced**

The United States Supreme Court has ruled that the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *See Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738, n.30 (1980). In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court held that negotiated, agreed-upon attorneys' fee provisions are the ideal towards which the parties should strive, stating that "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."

The United States Supreme Court has reemphasized this policy and further stressed that the trial court "has a responsibility to encourage agreement" on fees. *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984). Here, as part of the Settlement, Defendants agreed not to object to an award of 33 1/3% of the settlement amount for attorneys' fees. The requested attorneys' fee award is $733,260, which is equal to 33 1/3% of the Settlement Amount.   The Court therefore can enforce the agreement agreed to by the parties after extensive hard-fought and contentious litigation and agreed to as part of the proposal of an experienced class-action mediator.   The award of attorneys' fees is sought pursuant to California Labor Code §§ 218.5, 226, 1194, and California Code of Civil Procedure § 1025.1.   Class Counsel, worked 932.50 hours prosecuting this action on behalf of the Class from inception to the present. These hours, when calculated at Class Counsel's customary hourly rates, corresponds to a total lodestar of 472,547.50. (Hart Decl. ¶ 20; Declaration of Kenneth Yoon ("Yoon Decl.") ¶ 3.)

Here, informed arms-length bargaining between experienced counsel for the Class and Defendants was clearly adversarial and arms-length as the amount was

the result of substantial hard-fought litigation for over two (2) years.  Such bargaining can be viewed as the best measure of the market for fees.  The requested fee and cost award were bargained for during adversarial bargaining by counsel for each of the parties, after the substantive terms of the Settlement had been agreed to.  The requested fee and cost award was a product of arms-length negotiations and fairly reflects the marketplace value of the services rendered by Class Counsel in this case.  As a result, the fee agreed to by the parties should be approved.

**B.    Class Counsel's Fee And Costs Award Is Properly Calculated As A Percentage Of The Total Value Created For The Benefit Of The Class**

Class Counsel seek an attorney fee award for their successful prosecution and resolution of this action, calculated as 33 1/3% the Guaranteed Settlement Amount of $2,200,000.00.  California and federal courts have long recognized that an appropriate method for determining the award of attorneys' fees is based on a percentage of the total value of benefits afforded to class members by the settlement. *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977) ("*Serrano III*"); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); see also *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (1997). The awarding of a fee based on a percentage of the common fund recovered is to "spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent*, 557 F.2d at 769. The Guaranteed Settlement Amount here is $2,200,000.00.  Accordingly, Class Counsel's request for attorneys' fees in the amount of $733,260 is properly calculated and awarded as a percentage (33 1/3%) of the settlement fund created for the benefit of the Class.

**C.    The Common Fund Doctrine**

The Common Fund Doctrine is predicated on the principle of preventing unjust enrichment.  It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to

compensate those who created the fund.  Both state and federal courts in California have embraced this doctrine.  *Serrano*, 20 Cal. 3d at 35; *Vincent*,557 F.2d  at 769.

The Common Fund Doctrine is the oldest exception to the American rule, which prohibits fee shifting, that is, awarding attorneys' fees to the winning party from the losing party without statutory or contractual authorization.

> The Common Fund exception is grounded in the historic power of equity to permit the trustee of a fund or property (or a party preserving or recovering a fund for the benefit of others, as well as himself or herself) to recover costs, including attorney's fees. Those costs and fees are paid out of the fund or property itself, or directly from the other parties enjoying the benefit.

1 Richard M. Pearle, *California Attorney Fee Awards* (CEB 3d ed. 2010) § 5:10 at 329.

In the present case, it is clear that *a true common fund settlement fund* has been created, that guarantees payments to class members without need for class members to file a claim form and with *no funds* reverting to Defendants, and that the requirements supporting payment of fees by the beneficiaries of that fund are satisfied. Under the foregoing doctrine, courts have historically and consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose injuries and/or damages are too small to economically justify individual representation. In *Paul, Johnson, Alston & Hunt v. Gaulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit embraced this principle when it stated:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885), it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. (citation omitted) **The amount of such a reward is that which is deemed 'reasonable' under the circumstances**.

*Id.* at 271.

Accordingly, in determining a reasonable common fund fee award, courts should properly consider the fact that fees serve as an economic incentive for lawyers to bring class action litigation in order to achieve increased access to the judicial system

for meritorious claims and to enhance deterrents to wrongdoing. *See*, A. Conte, *Attorney Fee Awards*, 2nd. Ed., § 104, at 6§§.  Without prosecution on a contingent basis and use of the class action mechanism the courthouse door would effectively be closed to all class members due to the relatively small amount of their individual claims in relation to the enormous time and cost associated with class action litigation.  When the Ninth Circuit held that the Common Fund Doctrine was available in ERISA cases, the court echoed the foregoing sentiment:

> Having determined that risk multipliers remain available in common fund cases after *Dague*, we further note that we have held, in a pre-*Dague* case, that a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services.(citations omitted) Moreover, we have observed that the need for such an adjustment is particularly acute in class action suits. **The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent**.'

*Florin v. Nationsbank of Georgia*, 34 F.3d 560, 565 (9th Cir. 1994).

When this case was originally filed it was "inescapably contingent." Further, the result was by no means guaranteed.  Effective prosecution of this case was founded upon the risky contingent investment of time and expense.  Indeed, this is clearly evidenced by the history of this case, including the numerous hurdles Defendants placed before Plaintiffs.

### D.    Evolution Of The Percentage Method

Ever since the common fund doctrine found its genesis in *Trustees v. Greenough*, 105 U.S. 527 (1881), courts have awarded fees on a percentage basis.  In arriving at a reasonable percentage fee award, courts considered a variety of factors but focused on the particular circumstances of the case in fixing a percentage above or below a "benchmark."  During the late 1960's and early 1970's following the 1966 amendments to Rule 23, the size of settlement funds began increasing significantly and the fees awarded pursuant to the percentage method, usually taken out of context, were criticized by commentators and the general press.  Then, in 1973, that year's revision for the *Manual for Complex Litigation* (Herr, §147) proposed that all common fund fee awards be based on "time reasonably expended on the action."  This concept was then

embraced in *Lindy Bros. Builders, Inc. of Phila. v. American R. & R. San. Corp.*, 487 F.2d 161 (3rd Cir.1973) (*"Lindy I"*) and *Lindy Bros. Builders, Inc. of Phila. v. American R. & R. San. Corp.* 540 F.2d 102 (3rd Cir. 1976)(*"Lindy II"*). Thereafter, many courts adopted *Lindy's* rationale, and courts generally began awarding fees based on the actual time expended (the loadstar) in conjunction with a multiplier of between 2 and 4. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).

As time passed, however, and courts were forced to wade through voluminous and often indecipherable time records, it became evident that utilization of the loadstar method had reached a point of diminishing returns. Further, this approach created a disincentive for cases to settle early. As the court observed in *In re Activision Securities Litigation*, 723 F.Supp. 1373 (9th Cir. 1989):

> **The question this court is compelled to ask is, 'Is this process necessary?' Under a cost-benefit analysis, the answer would be a resounding, 'No!'** Not only do the *Lindy and Kerr-Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. **Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a loadstar approach, there is little incentive to arrive at an early settlement.**

*Id.* at 1375.

In *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997), the Ninth Circuit confirmed that the percentage method governs attorney fee awards in common fund cases. *Williams* held that the percentage award should be calculated based on the total value of the common fund not just the amount claimed by class members because, under *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), "attorneys for a successful class may recover a fee based on the entire common fund created for the class…." 129 F.3d at 1027.

Since *Blum v. Stenson*, 465 U.S. 886 (1984), where the Supreme Court approved a "percentage of fund" as being an appropriate fee award, courts have

- 13 -

1   increasingly rejected the loadstar approach.  This trend recognizes the fact that
2   compensating class counsel in class litigation on a percentage basis (common fund)
3   makes good sense because (1) it is consistent with the private marketplace where
4   contingent fee attorneys are customarily compensated on such a basis; (2) it aligns the
5   interests of class counsel and absent class members in achieving the maximum possible
6   resolution of the case; and, (3) it augers for the most efficient and expeditious resolution
7   of the litigation by providing an incentive for early, yet reasonable, settlement.  *See,
8   e.g., In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS
9   15488, at *27-28 (S.D. Cal. August 30, 1990) ("I fully agree with those authorities that
10  have held that a percentage of recovery approach is far more realistic, beneficial and
11  equitable in limited fund cases than is a lodestar approach based on hours times billable
12  rates.")  Class Counsel respectfully submit that the fee award in this case should be
13  made on a percentage basis equal to 33 1/3% of the no-reversion settlement fund.

14          **E.      The Award Is Supported By 1) The Results Achieved; 2) The Risk, 3)**
15                  **The Skill Required, 4) The Contingent Nature Of The Fee 5) Awards**
16                  **In Similar Cases, And, 6) Class Counsel's Lodestar Hours**

17          What has now emerged in most fee award decisions is a recognition that
18  fee determinations in both common fund and statutory fee situations are incapable of
19  mathematical precision because of the intangible factors that must be resolved in the
20  court's discretion based on the circumstances of each particular case.  *See*, A. Conte,
21  *Attorney Fee Awards*, 2nd Ed., § 207, at 44.  In determining an appropriate fee in a
22  common fund case, a court must decide, based on the unique posture of each case, what
23  percentage of the fund would most reasonably compensate Class Counsel given the
24  nature of the litigation and the performance of counsel.  *Paul, Johnson, Alston & Hunt*,
25  886 F.2d at 272 (the benchmark percentage fee may be adjusted to account for the
26  circumstances involved in this case.)

27          Courts apply a five-part test in calculating a reasonable percentage fee in
28  common fund cases.

> (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.

*In re Omnivision Technologies, Inc.* 559 F. Supp. 2d 1036, 1046 (N.D.Cal. 2007); see also *McPhail v. First Command Fin. Planning, Inc.*, Case No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, at *21 (S.D. Cal. March 30, 2009).

Here, each of these five factors strongly support an award of the percentage fee (33 1/3%) requested in this case.

### (1).   The Results Achieved.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046; *see also In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005).   Class Counsel obtained a significant result in this case for the Class Members.   The Settlement provides monetary benefits to the Class Members that nearly fully compensate them for missed meal period penalties and overtime.   In particular, on a raw average basis and assuming no Class Members opt out, each Operator and Controller will receive $21.05 for every 12-hour shift worked, each class member will receive $6.23 per week, and each non-Operator/Controller class member will receive $3.91 for every 12-hour shift worked, after payment of fees and costs. These figures equate to an outstanding recover for the class, as 94 Class Members, 20% of the Class, are projected to receive more than $10,000.00, with 36 receiving over $15,000.00, and 2 receiving over $16,000.00. What is even more significant is the fact that, should some Class Members opt out the net recovery per class member will increase given that the Settlement requires the full amount of the net settlement amount to be paid out to all class members who do not opt out.[4]   The Settlement is particularly advantageous to the Class Members because the proceeds will be distributed shortly as opposed to waiting additional years for a similar, or possibly less favorable, result.

---

[4]   Plaintiff will provide a more accurate average payment amount once the claims period has expired and the number of claimants is known to the Parties.

Moreover, Class Counsel were able to negotiate a significantly limited release that only applied to the claims in the Third Amended Complaint, as well as negotiate a class settlement that excludes union employees and periods of union employment.  Needless to say, a settlement of $2,200,000.00 for only 470 individuals is undoubtedly a highly valued settlement for a meal/rest break, overtime and vacation case.  (Hart Decl. ¶ 4.)  As noted above, 94 Class Members, 20% of the Class, are projected to receive more than $10,000.00, with 36 receiving over $15,000.00.  These are substantial settlements even for settlements or trial verdicts for individual actions and, thus, illustrate the achievement of the *class* Settlement achieved.

There is little question that the result achieved in this litigation is excellent. The absence, at this time, of any objection to the settlement or the preliminary attorneys' fee request from any of a total of 470 Class Members bears this out.

### (2).   Risks of Litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47.

At the time this case was brought, the result was far from certain. Defendants' numerous defenses to the case, including the deminimus defense and the fact that there were no time records to show exactly how much time the Class Members had worked off the clock, created difficulties with proof and complex legal issues for Class Counsel to overcome.  As noted above, Defendants contended that they had a good faith defense regarding their vacation policies and that the "nature of the work" required on-the-clock meal periods.  Moreover, even if Plaintiffs could prove there was off the clock work, Defendants contended that there were no records to confirm how long each employee had actually worked off the clock.

Finally, even if Plaintiffs' filed motion for class certification had been granted, there was always a risk that discovery could lead to decertification of their claims.

1    All of these were very substantial risks any of which could have resulted in

2    the Class receiving nothing if the claims were litigated.

3    ### (3).    The Skill Required and the Quality of Work

4    Practice in the narrow area of wage and hour class action litigation requires

5    skill, knowledge and experience in two distinct subsets of the law.  Expertise in one

6    does not necessarily translate into expertise in the other.  Class Counsel must have

7    expertise in both.  The issues presented in this case required more than just a general

8    appreciation of wage and hour law and class action procedure.

9    The Settlement was possible only because Class Counsel was able to

10   convince Defendants that Plaintiffs could potentially prevail on the difficult legal issues

11   regarding meal/rest breaks, overtime and vacation, obtain class certification, overcome

12   difficulties in proof as to monetary relief and take the case to trial if need be, as

13   exemplified by the foregoing.

14   In successfully navigating these hurdles, Class Counsel displayed the

15   necessary dual skill set.  The high quality of Class Counsel's work in this case was

16   mandated by the very vigorous and contentious defense presented by counsel for

17   Defendants.  Class Counsel were required to invest substantial time and resources in

18   investigation, discovery and determination of potential damages and communicating

19   with and responding to opposing counsel's and class members' requests, demands, and

20   inquiries.

21   The contingent fee practices of Class Counsel do not accommodate the

22   investment of unnecessary time in a case. This case was litigated on a contingent basis

23   with all of the concomitant risk factors inherent in such an uncertain undertaking.

24   ### (4).    The Contingent Nature of the Fee and the Financial Burden

25   There is a substantial difference between the risk assumed by attorneys

26   being paid by the hour and attorneys working on a contingent fee basis.  The attorney

27   being paid by the hour can go to the bank with his fee.  *Powers v. Eichen*, 229 F.3d

28   1249, 1256 (9th Cir. 2000).  The attorney working on a contingent basis can only log

1  hours while working without pay towards a result that will hopefully entitle him to a
2  market place contingent fee taking into account the risk and other factors of the
3  undertaking. *Id* at 1257. Otherwise, the contingent fee attorney receives *nothing*. *Id*.

4        In this case, Class Counsel subjected themselves to this contingent fee
5  market risk in this all or nothing contingent fee case wherein the necessity and financial
6  burden of private enforcement makes the requested award appropriate.

7        Counsel retained on a contingency fee basis, whether in private matters or
8  in class action litigation, is entitled to a premium beyond their standard, hourly, non-
9  contingent fee schedule in order to compensate for both the risks and the delay in
10 payment. The simple fact is that despite the most vigorous and competent of efforts,
11 success is never guaranteed. *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir.1967).
12 Indeed, if counsel is not adequately compensated for the risks inherent in difficult class
13 actions, competent attorneys will be discouraged from prosecuting similar cases.
14 *Steiner v. BOC Fin. Corp.*, No. 78 Civ. 348, 1980 U.S. Dist. LEXIS 14561, at *6-*7
15 (S.D.N.Y. Oct. 10, 1980).

16       Here, the contingent nature of the fee award, both from the point of view
17 of eventual settlement and the point of view of establishing eligibility for an award, also
18 warrant the requested fee award. A number of difficult issues, the adverse resolution of
19 any one of which could have doomed the successful prosecution of the action, were
20 present here. As discussed above, attorneys' fees in this case were not only contingent
21 but extremely risky, with a very real chance that Class Counsel would receive nothing
22 at all for their efforts, having devoted time and advanced costs.

23       Class Counsel were required to advance all costs in this litigation.
24 Especially in this type of litigation where the corporate defendants and their attorneys
25 are well funded, this can prove to be very expensive and risky. Accordingly, because
26 the risk of advancing costs in this type of litigation can be significant, it is therefore cost
27 prohibitive to many attorneys. The financial burdens undertaken by Plaintiffs and Class
28 Counsel in prosecuting this action on behalf of the Class were very substantial. To

date, Class Counsel advanced a total of $26,269.87 in costs which could not have been recovered if this case had been lost.  (Hart Decl. ¶ 18; Yoon Decl. ¶ 4.)  Further, since Plaintiffs brought a vacation claim that has a two-way attorney's fee provision, Plaintiffs would have been responsible for paying Defendants' attorney's fees had the vacation claim come down in Defendants' favor.  Plaintiffs undertook the risk of liability for Defendants' costs and fees had this case not succeeded, as well as other potential negative financial ramifications from having come forward to sue Defendants on behalf of the Class.

Accordingly, the contingent nature of the fee and the financial burdens on Class Counsel and Plaintiffs also support the fee requested.

### (5).   Awards in Similar Cases

The attorneys' fees requested by Class Counsel are within the range of fees awarded in comparable cases.  A review of class action settlements over the past 10 years shows that the courts have historically awarded fees in the range of 20% to 50%, depending upon the circumstances of the case.  *In re Warner Commc'ns Sec. Litig.,* 618 F.Supp. 735, 749-50 (S.D. N.Y. 1985). Class Counsels' requested fees are 33 1/3% of the Guaranteed Settlement Amount, a percentage well within the range of reasonableness given the excellent results obtained for the Class, the risks undertaken, and the skill of the prosecution.

In *In re Warner Commc'ns Sec. Litig.*, Judge Keenan concluded that percentage fees in common fund cases range from 20% to 50%.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. at 749-50.  Professor Newberg is in accord:

> No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented.

Alba Conte et al., *Newberg on Class Actions* § 14.6, at 550 (4th Ed. 2010).

The following are examples of some of the class action awards that bear out the reasonableness of a fee award equivalent to or greater than 33 1/3% of the Maximum Settlement Amount:

*Romero v. Producers Dairy Foods, Inc.*, 1:05cv0484DLB, 2007 U.S. Dist. LEXIS 86270  (E.D. Cal. 2007), is a case in which plaintiffs alleged that the defendant failed to pay its drivers earned wages (regular and overtime) and failed to provide meal and rest periods as required by law.  *Id.* at *2.  The Honorable Dennis L. Beck found that class counsel's fee request of $80,000 (33 1/3%), where the settlement provided for a fund of $240,000, was reasonable, noting that ""Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)."  *Id.* at 3, 10.

On October 7, 2005, in *Scura et al. v. Shurgard Storage Centers, Inc.* (U.S.D.C. Northern Dist. Cal. Case No. C 02 5246 CRB), the Hon. Charles R. Breyer awarded a 33 1/3% fee request in an overtime class action.

In *In re Heritage Bond Litigation*, 02-ML-1475DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005), the Honorable Dickran Tevrizian found that attorneys' fees equal to 33 1/3% of the common fund ($27,783,000.00) were reasonable and appropriate under the circumstances of the case.  *Id.* at *58, 61.

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) (awarding 33.3% in attorneys' fees in connection with the settlement of a wage and hour class action).

*Singer v. Becton Dickinson & Co.*, 08-CV-821-IEG(BLM), 2010 U.S. Dist. LEXIS 53416 at *22-*23 (S.D. Cal. June 1, 2010) (awarding 33.3% in attorneys' fees in connection with the settlement of a wage and hour class action).

Other non-published cases from California's Federal District Courts awarding 33 and 1/3%, or even higher, in attorneys' fees as part of wage and hour class action settlements include the following:

1        *Benitez et al. v. Wilbur* (E.D. Cal., 1:08-CV-1122 LJO GSA)

2        *Chavez et al. v. Petrissans et al.* (E.D. Cal., 1:08-CV-00122 LJO-GSA)

3        *Randall Willis et al. v. Cal Western Transport, and Earl Baron et al. v. Cal

4 Western Transport*, Coordinated Case No. 1:00-cv-05695 AWI LJO);

5        *Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 VBF (Ex), Doc. No. 77, P 6

6 (C.D. Cal. Oct. 16, 2009)

7        *Birch v. Office Depot, Inc.*, Case No. 06cv1690 DMS (WMC), Doc. No.

8 48, P 13 (S.D. Cal. Sept. 28, 2007) (awarding a ***40%*** fee on a $16 million wage and

9 hour class action)

10        *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA), Doc. No.

11 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a ***40% fee*** on a $3.75 million wage and

12 hour class action)

13        A fee award of 33 1/3% of the guaranteed Settlement Amount in this case

14 is therefore significantly reasonable in light of the prevailing fees that have been

15 awarded in other similar cases as set forth above.  Furthermore, it is certainly significant

16 that not a single objection has been made to the fee request.

17        **(6).**     **The Reasonableness of the Requested Fee Award Is Confirmed**

18                 **by Class Counsel's Lodestar**

19        As a final check on the reasonableness of the requested fees, courts often

20 compare the fee counsel seeks as a percentage with what their hourly bills would

21 amount to under the lodestar analysis. *See, e.g., Vizcaino*, *supra*, 290 F.3d at 1050-51

22 ("Calculation of the lodestar, which measures the lawyers' investment of time in the

23 litigation, provides a check on the reasonableness of the percentage award."); 

24 *Omnivision*, *supra*, at 1048.  Here, Class Counsel expended 932.5 hours prosecuting

25 this action on behalf of the Class from inception to the present. These hours, when

26 calculated at Class Counsel's customary hourly rates, corresponds to a total lodestar of

27 $472,547.50. (Hart Decl. ¶¶ 20; Yoon Decl. ¶ 3.)  Based on this amount, Plaintiffs'

28 request is for a multiplier of 1.55, which based on the factors described above including

the risks involved, the contingent nature of the case, and the benefits Class Counsel were able to achieve for the Class is fair. Indeed, in similar cases, courts have approved multipliers ranging between 1 and 4. *Omnivision*, *supra*, at 1048. Here, based on a multiplier of 1.55, the reasonableness of the requested fee award is confirmed by the lodestar cross-check.

As a result, the reasonableness of the requested fee award is confirmed by comparison to Class Counsel's actual lodestar in this case.

## V.   THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS

The request for reimbursement of costs, in an amount not to exceed $30,000.00 is fair and reasonable.  As stated above, the costs are all litigation related costs, which have been detailed in the supporting declarations of Class Counsel and which total $26,269.87.  (Hart Decl. ¶ 18; Yoon Decl. ¶ 4.)  The authority for the court to award this is the parties' settlement agreement and Labor Code §§ 218.5 and 226.  As such, this request should be approved.

## VI.   THE CLAIMS ADMINISTRATOR'S FEES AND COSTS SHOULD BE APPROVED

Pursuant to the terms of the Settlement Agreement, the fees and costs of the Claims Administrator are to be paid out of the class settlement funds.  Plaintiffs will supplement their request prior to hearing with a declaration from CPT Group, Inc.  At this time, the estimate is $20,000.00.  (Hart Decl. ¶ 7.)  For such reasons, it is requested that the Administrator's fees be approved.

## VII.   CONCLUSION

For all the foregoing reasons, and on the basis of the authorities cited herein, Plaintiffs respectfully submit that the standards for final approval of the requested Service Payment, Class Counsel attorney's fees and costs, and Claim Administrator costs have been met, and that they are within the range of reasonableness and are fair, adequate and reasonable.

1      Accordingly, Plaintiffs respectfully requests that the Court enter an Order

2  in a form to be proposed and submitted:

3      1.   Approving Plaintiffs' request for Service Payment to the Class

4  Representatives pursuant to the terms of the Settlement Agreement;

5      2.   Approving Plaintiffs' request for an award of the Class Counsel's

6  fees and litigation costs pursuant to the terms of the Settlement Agreement;

7      3.   Approving Plaintiffs' request for payment of the Claims

8  Administrator administration costs pursuant to the terms of the Settlement Agreement

9

10  DATED:  January 25, 2012            LAW OFFICES OF PETER M. HART

11

12                          By:  _____/s/_____

13                                Peter M. Hart
                                  Attorneys for Plaintiffs James Lugliani,
14                                Chris Willis and the Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28